# In the United States Court of Federal Claims

No. 19-496C

(E-Filed:  November 30, 2020)

|  |  |  |
|---|---|---|
| ACADIANA MANAGEMENT GROUP, LLC, <u>et al.</u>, | ) ) ) | |
| Plaintiffs, | ) ) ) | Motion to Dismiss; RCFC 12(b)(1); RCFC 12(b)(6); Bankruptcy Fees; Illegal Exaction; No Means of Transfer. |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

Bradley L. Drell, Alexandria, LA, for plaintiff.  August Rantz, IV, Heather M. Matthews, Chelsea M. Tanner, of counsel.

Shari A. Rose, Trial Attorney, with whom were Joseph H. Hunt,[1] Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Claudia Burke, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

<u>OPINION</u>

CAMPBELL-SMITH, Judge.

Before the court is defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC).  See ECF No. 18.  Defendant filed its motion on October 7, 2019, and plaintiffs filed their response on

---

[1]  Defendant's response to plaintiff's supplemental brief in this matter, ECF No. 40, substitutes Acting Assistant Attorney General Ethan P. Davis for Joseph H. Hunt.  Mr. Hunt appears on all defendant's briefing up to that point.

November 26, 2019.  See ECF No. 21.  Defendant filed a reply on January 31, 2020, see ECF No. 26.  Plaintiffs filed a sur-reply pursuant to the court's order granting their request, see ECF No. 32, on April 21, 2020.  See ECF No. 33.  And, defendant filed a response to plaintiffs' sur-reply on May 12, 2020.  See ECF No. 36.

Plaintiffs then filed a supplemental brief in support of their response to defendant's motion on August 21, 2020.  See ECF No. 39.  Defendant filed a response to plaintiffs' supplemental brief on August 28, 2020.  See ECF No. 40.  Briefing is now complete and the motion is ripe for decision.[2]

For the reasons set forth below, defendant's motion to dismiss plaintiffs' complaint is **GRANTED**.

I.      Background[3]

Plaintiffs filed their complaint in this court on April 3, 2019, alleging that the fees they paid during their Chapter 11 bankruptcy proceedings were higher than they would have been had plaintiffs filed their bankruptcies in a different jurisdiction, thus making the bankruptcy system non-uniform in violation of the United States Constitution.  See ECF No. 1 at 3.  Plaintiffs have since amended their complaint twice to add information and plaintiffs.  See ECF No. 8 (first amended complaint); ECF No. 17 (second amended complaint).

Plaintiffs' complaint arises out of the United States Trustee Program (USTP) under the United States Department of Justice, which appoints and supervises bankruptcy trustees to undertake many of the administrative responsibilities of the bankruptcy system.  See ECF No. 17 at 7.  All bankruptcy jurisdictions participate in the program, with the exception of those in Alabama and North Carolina.  See id.  Those states instead implemented the Bankruptcy Administrator Program (BAP) under the Administrative Office of the United States Courts and the Judicial Conference of the United States,

---

[2]      On November 30, 2020, defendant filed an unopposed motion for leave to file a supplemental brief in this matter.  See ECF No. 41.  Defendant seeks leave to file a brief drawing the court's attention to a recent decision of the United States Court of Appeals for the Fifth Circuit, In re Buffets, LLC, 979 F.3d 366 (5th Cir. 2020), "which involved parallel challenges to the amended quarterly-fee statute at issue in this case."  ECF No. 41-1 at 2.  For good cause, defendant's motion is **GRANTED**.  Defendant's brief reinforces the conclusions that the court reaches herein.

[3]      The facts are taken from plaintiffs' complaint and are undisputed by defendant in its motion to dismiss.  The court makes no findings of fact here.

which performs a similar function to the USTP.[4]  See id.  Both programs are funded by the debtors who utilize the bankruptcy system through the payment of quarterly fees.  See id. at 7-8 (citing 28 U.S.C. § 1930).

In 2017, Congress increased the quarterly fees owed by debtors who filed for bankruptcy pursuant to Chapter 11 of the bankruptcy code, 11 U.S.C. §§ 1101-1195, and had disbursements greater than $1,000,000, to "'the lesser of 1 percent of such disbursements or $250,000.'"  Id. at 8 (quoting and citing 28 U.S.C. § 1930(a)(6)(B)).  The increased fees were to go into effect for "each of fiscal years 2018 through the first quarter of 2018, "in bankruptcy cases filed before October 1, 2018, inclusive of cases filed before October 26, 2017."  Id. at 8-9.  The BAP, however, did not implement the increased fee until the fourth quarter of 2018 and did not apply it to cases filed prior to October 1, 2018.  See id. at 9.

Plaintiffs are two groups of companies that filed Chapter 11 bankruptcy cases in 2017.  See id. at 4-6, 9.  The first group is Acadiana Management Group, LLC; Albuquerque-AMG Specialty Hospital, LLC; Central Indiana-AMG Specialty Hospital, LLC; LTAC Hospital of Edmond, LLC; Houma-AMG Specialty Hospital, LLC; LTAC of Louisiana, LLC; and Las Vegas-AMG Specialty Hospital, LLC (AMG plaintiffs).  See id. at 4-5.  The AMG plaintiffs filed their bankruptcy cases on June 23, 2017, "with a joint plan of reorganization," in the United States District Court for the Western District of Louisiana.  Id. at 4-5, 9.  The second group of plaintiffs includes Mr. Warren L. Boegel; Boegel Farms, LLC; and Three Bo's, Inc., (Boegel plaintiffs), which each filed their Chapter 11 bankruptcy cases on February 23, 2017 in the United States District Court for the District of Kansas.  See id. at 5-6, 9.  The bankruptcy court entered final decrees in the AMG plaintiffs' cases on June 15, 2018, and issued structural dismissals in the Boegel plaintiffs' cases on June 18, 2018, and June 21, 2018.  See id. at 9.

Plaintiffs paid the increased quarterly fees in the first and second quarters of 2018.  See id. at 9-11.  Had plaintiffs filed their bankruptcy cases in the BAP jurisdictions—Alabama or North Carolina—the AMG plaintiffs would have paid $216,784.69 less in fees, and the Boegel plaintiffs would have paid $140,845 less in fees, because those

---

[4]     The United States Trustee Program (USTP) was established as a pilot program by the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (1978), in 18 districts to "further the public interest in the just, speedy and economical resolution of cases filed under the Bankruptcy Code."  Department of Justice, United States Trustee Program: About the Program, https://www.justice.gov/ust/about-program (last updated Dec. 6, 2019).  Congress then expanded the program by enactment of the Bankruptcy Judges, U.S. Trustees & Family Farmer Bankruptcy Act of 1986, Pub. L. No. 99-554, 100 Stat. 3088 (1986), to cover all jurisdictions except North Carolina and Alabama, in which the Bankruptcy Administrator Program (BAP) was established that same year.  See id.; United States Courts, Trustees and Administrators, https://www.uscourts.gov/services-forms/bankruptcy/trustees-and-administrators (last visited Nov. 24, 2020).

jurisdictions did not implement the increased fees for cases filed prior to October 1, 2018. See id. at 9, 11. Plaintiffs therefore filed suit in this court alleging that the difference amounted to an illegal exaction in violation of the Constitution and by way of a misapplication of the fee statute. See id. at 11. Plaintiffs seek class certification for similarly situated plaintiffs. See id. at 11-19.

Defendant moved to dismiss plaintiffs' complaint for lack of jurisdiction and, in the alternative, for failure to state a claim. See ECF No. 18. After extensive briefing, this matter is ripe for decision by the court.

II.     Legal Standards

    A.     Subject Matter Jurisdiction

Plaintiffs bear the burden of establishing the court's subject matter jurisdiction by a preponderance of the evidence. See Brandt v. United States, 710 F.3d 1369, 1373 (Fed. Cir. 2013). To determine whether plaintiffs have carried this burden, the court must accept "as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)). If the court does not have jurisdiction over the matter, the court must dismiss it, see RCFC 12(h)(3), or, if it is in the interests of justice, transfer the case to a court that has jurisdiction, see 28 U.S.C. § 1631.

The Tucker Act delineates this court's jurisdiction. See 28 U.S.C. § 1491. That statute "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) (citations omitted). Specifically, the statute provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act "waives the Government's sovereign immunity for those actions." See Fisher, 402 F.3d at 1172. The statute does not, however, create a substantive cause of action or right to recover money damages in the Court of Federal Claims. See id. "[T]o come within the jurisdictional reach and the [sovereign immunity] waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Id. (citations omitted). In other words, the source underlying the cause of action must be money mandating, in that it "'can fairly be

interpreted as mandating compensation by the Federal Government for the damage sustained.'" United States v. Testan, 424 U.S. 392, 400 (1976) (quoting Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1009 (Ct. Cl. 1967), and citing Mosca v. United States, 417 F.2d 1382, 1386 (Ct. Cl. 1969)).

B.     Failure to State a Claim

When considering a motion to dismiss brought under RCFC 12(b)(6), the court "must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the plaintiff." Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

III.    Analysis

A.     This Court Has Jurisdiction to Hear Plaintiffs' Claims

In its motion to dismiss, defendant argues that this court does not have jurisdiction over this matter: (1) because plaintiffs' claims arise under Title 11, which is committed to the bankruptcy courts; (2) because this court may not review bankruptcy court orders; and (3) because the statute at issue is not money mandating. See ECF No. 18 at 10-11. Plaintiffs respond that this court does have jurisdiction: (1) because the fee issue arises in a case brought pursuant to Title 11, but not directly under Title 11, and therefore is not committed to the bankruptcy court's exclusive jurisdiction, see ECF No. 21 at 12-16; (2) because the court does not need to review any bankruptcy court orders to resolve the complaint, see id. at 16-19; and (3) because the United States Court of Appeals for the Federal Circuit determined that "there is no need to find a separate, express money damages provision in a fee-authorizing statute for plaintiffs to proceed under the Tucker Act," ECF No. 39 at 1.

1.     Concurrent Jurisdiction with the Bankruptcy Courts

Plaintiffs assert a claim for illegal exaction based on their contention that the statute authorizing the bankruptcy fees they paid was unconstitutional. See ECF No. 17 at 12, 15, 17. Specifically, plaintiffs allege that the statute, 28 U.S.C. § 1930(a)(6)-(7), as applied to themselves and other debtors like them, violated the uniformity requirement of Article 1 § 8 of the Constitution and the Due Process clause of the Fifth Amendment. See id. at 11; see also U.S. CONST. art. 1, § 8 (giving Congress the power to "establish . . .

5

uniform Laws on the subject of Bankruptcies throughout the United States"). Therefore, plaintiffs argue, this court has concurrent jurisdiction with the district courts to hear their claim. See ECF No. 21 at 12-16. Defendant, however, argues that this court does not have jurisdiction to hear cases arising under Title 11, or arising in or related to cases under Title 11. See ECF No. 18 at 21. Accordingly, because cases involving the quarterly fees mandated by 28 U.S.C. § 1930 arise in bankruptcy, this court lacks jurisdiction to consider them. See ECF No. 18 at 21.

The parties did not point out, nor could this court find, case law from either this court or the Federal Circuit squarely addressing this court's jurisdiction to hear claims related to the fees paid in bankruptcy matters. Therefore, the court must review both its own jurisdiction and that of the bankruptcy courts to decide this matter.

Congress, through legislation, has conferred specific jurisdiction on both this court and the bankruptcy court. A case coming before this court must involve a "claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort," and the substantive law forming the basis of the claim must be money mandating. 28 U.S.C. § 1491(a)(1); see also Testan, 424 U.S. at 400. Likewise, only the bankruptcy courts, by designation from the district courts, may hear cases brought "under title 11"— the bankruptcy code. 28 U.S.C. § 1334(a); see also 28 U.S.C. § 157(a).

As a general matter, then, this court does not have jurisdiction to hear cases arising under bankruptcy law even if they involve claims against the United States. See, e.g., Allustiarte v. United States, 256 F.3d 1349, 1352 (Fed. Cir. 2001) (holding that permitting collateral attacks on bankruptcy court decisions in the guise of takings claims in this court is not permitted); Hufford v. United States, 87 Fed. Cl. 696, 703 (2009) (noting that cases arising under Title 11 "concern bankruptcy, which is committed either to the district courts or to bankruptcy courts"). Jurisdiction of this court and jurisdiction of the bankruptcy courts overlap only under particular circumstances. The bankruptcy courts do not have exclusive jurisdiction over "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Thus, where a party brings a civil proceeding against the United States "arising under title 11, or arising in or related to cases under title 11" this court may have concurrent jurisdiction with the bankruptcy courts to decide the case. Id.; 28 U.S.C. § 1491(a)(1); Quality Tooling, Inc. v. United States, 47 F.3d 1569, 1572-73 (Fed. Cir. 1995).

The court must, therefore, determine whether plaintiffs' claims constitute "civil proceedings arising under title 11, or arising in or related to cases under title 11" such that they may fall within the concurrent jurisdiction of this court and the bankruptcy court. 28 U.S.C. § 1334(b). A claim "arises under" Title 11 if it "involve[s] a cause of action created or determined by a statutory provision of title 11." In re Wood, 825 F.2d

6

90, 96 (5th Cir. 1987).  Similarly, a claim "arises in" Title 11 if it is "not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." Id. at 97.  If the claim could only arise in bankruptcy, it is a core proceeding—one which the bankruptcy court may hear and on which it may enter orders and judgments.  See id.; 28 U.S.C. § 157(b).

Plaintiffs' claims here stem from 28 U.S.C. § 1930, which sets the fees to be paid by debtors making use of the bankruptcy system.  See generally ECF No. 17.  In the context of determining whether a claim to enforce § 1930 was a core proceeding, and therefore within the bankruptcy court's jurisdiction, the United States Court of Appeals for the Third Circuit determined that "by definition, an action for trustee's fees pursuant to § 1930(a)(6) applies only in chapter 11 cases," and therefore must "arise in" bankruptcy.  United States Tr. v. Gryphon at Stone Mansion, Inc., 166 F.3d 552, 556 (3d Cir. 1999); see also In re Boulders on the River, Inc., 218 B.R. 528, 543 (D. Or. 1997) (finding that a § 1930 claim "arises in a title 11 case and is therefore a core proceeding squarely within the jurisdiction of the bankruptcy court").  Thus, the Third Circuit concluded that the bankruptcy courts have jurisdiction to hear a claim under § 1930 pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b).  See Gryphon at Stone Mansion, Inc., 166 F.3d at 555-56.  The Third Circuit did not, however, explicitly consider the question of whether a claim under § 1930 arises under Title 11, and thereby falls within the exclusive jurisdiction of the district courts sitting in bankruptcy.  See id.  In determining the limits of this court's jurisdiction, the court looks to its own controlling precedent.

In Quality Tooling, the Federal Circuit addressed this court's concurrent jurisdiction with the bankruptcy courts.  See 47 F.3d at 1572-73.  In that case, the plaintiff brought a contract dispute before this court and subsequently filed for protection under Chapter 11 of the Bankruptcy Act, 11 U.S.C. §§ 1101-1195.  See id. at 1571.  After several procedural moves by the parties, the plaintiff's contract claim landed in the bankruptcy court and the defendant moved to transfer it back to this court, arguing that the bankruptcy court did not have jurisdiction to hear the claim.  See id. at 1571-72.  The Federal Circuit considered the jurisdiction of both courts and concluded that "[t]here can be little doubt that, by statute, both the District Court, sitting in bankruptcy, and the Court of Federal Claims are empowered with subject matter jurisdiction over this contract dispute."  Id. at 1573.

The Circuit Court did not end its analysis there, however; it went on to consider the "prudential problem" of "which court should hear the case, and why?"  Id. at 1579 (emphasis in original).  After reviewing the case law, the court held that "'a bankruptcy court should defer a complicated, technical dispute to a specialized forum,'" although it was up to the discretion of the bankruptcy judge to determine whether a particular case presented the complicated, technical disputes meriting transfer.  Id. at 1580 (quoting Gary

Aircraft Corp. v. United States, 698 F.2d 775, 783 (5th Cir. 1983)).  The Federal Circuit then concluded that "by and large" government contract claims should be transferred to this court for resolution.  Id.

The court finds the Federal Circuit's ruling in Quality Tooling to be persuasive, which might counsel against this court making a determination about the "complicated, technical dispute" over the constitutionality of a bankruptcy law.  Id. at 1580; cf. Allustiarte, 256 F.3d at 1352.  Of note, plaintiffs' claims do not stand-alone; rather, their claims are derivative of plaintiffs' bankruptcy proceedings.  The claims also involve a question about the law authorizing the funding for a program that is integral to the bankruptcy courts—the USTP—which has been inextricably intertwined with the bankruptcy courts since its founding in 1978.  See Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2686 (1978); Department of Justice, United States Trustee Program: About the Program, https://www.justice.gov/ust/about-program (last updated Dec. 6, 2019).

Were the court to apply the Circuit's reasoning in Quality Tooling here, it might find that the tribunal in the best position to evaluate the constitutionality of § 1930, which has been deemed to represent a core proceeding to bankruptcy and authorizes the funding for program that is integral to the bankruptcy courts, is the forum built for review of bankruptcy matters—the district courts, sitting in bankruptcy.  Like this court's particular expertise in government contracting matters, the bankruptcy court has particular expertise in bankruptcy matters.

The rub in such circumstance, however, is that the court can discern no ready means to transfer this case to the district court.  The court's review of the case law reveals that plaintiffs' claims likely arise in bankruptcy for purposes of the bankruptcy court's jurisdiction.  See Gryphon at Stone Mansion, Inc., 166 F.3d at 556.  Without sufficient guidance as to whether such a claim could appropriately be transferred to another court of specific jurisdiction, the court must conclude that a claim against the United States premised on § 1930 falls under the concurrent jurisdiction of the bankruptcy court and this court.  Therefore, the court cannot transfer this matter to the district court pursuant to 28 U.S.C. § 1631, which only provides a means of transfer when the court lacks jurisdiction.  See Fisherman's Harvest, Inc. v. PBS&J, 490 F.3d 1371, 1375 (Fed. Cir. 2007) ("Because there was no 'want of jurisdiction' . . . , a transfer under section 1631 is not proper.").  Likewise, transfer in the interests of justice pursuant to 28 U.S.C. § 1404(a) is limited to transfers between district courts.  See id. at 1378.

The court therefore, concludes that, despite any prudential considerations that might weigh against its deciding this matter, it has concurrent jurisdiction in this case and must so decide.

2.      Bankruptcy Court Orders

Defendant asserts that this court lacks jurisdiction over plaintiffs' claims because to render a decision in this matter the court must review orders entered by the bankruptcy court.  See ECF No. 18 at 22.  Defendant argues that the AMG plaintiffs' bankruptcy plan and confirmation order included direction that plaintiffs "'shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) through the second quarter of 2018.'"  Id. at 23 (quoting bankruptcy court order confirming AMG plaintiffs' plan).  Likewise, defendant notes that the Boegel plaintiffs' dismissal order stated that there were "'very limited assets for reorganization purposes,'" but argues that plaintiffs now assert that an additional $140,845 would have been available to creditors before dismissal.  Id. at 24-25 (quoting bankruptcy court dismissal order for the Boegel plaintiffs).  These orders, defendant contends, occurred after Congress' amendment to § 1930, and would require review by this court in making a decision in this matter.  See id. at 23-25.  Plaintiffs respond that "this Court need not review, much less interpret, any order of any bankruptcy court to rule on the allegations set forth in this action."  ECF No. 21 at 16-17.

It is well-settled that this court may not review the orders of a district court.  See Joshua v. United States, 17 F.3d 378, 380 (Fed. Cir. 1994) ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts.").  The court agrees with plaintiffs, however, that this case requires no such review.  Plaintiffs have alleged an illegal exaction premised on the unconstitutionality of § 1930(a)(6) and its application to their bankruptcy cases.  The orders quoted by defendant refer generally to the necessity that plaintiffs pay fees and the amount of assets available for dispersal, while plaintiffs' claims allege the illegal exaction of fees based on the constitutionality of the statute authorizing their imposition.  This does not constitute a collateral attack on the judgment issued by the bankruptcy court.  Cf. Allustiarte, 256 F.3d at 1351 (reasoning that reviewing a takings claim premised on the actions approved by a bankruptcy court constituted an improper collateral attack on that court's judgment).  The court need not review any bankruptcy court orders to determine whether the statute is constitutional, and, thereby, determine whether its application constituted an illegal exaction.

3.      Money Mandating Statute

Finally, defendant asserts that this court lacks jurisdiction because § 1930 is not a money-mandating statute, as it does not provide "a money remedy for an allegedly unlawful assessment of quarterly fees."  ECF No. 18 at 25.  Defendant contends that plaintiffs cannot demonstrate that the statute provides that the remedy for its violation is

the return of money because there is "no language" in § 1930 that provides debtors with a "right to compensation" for unlawfully assessed fees.[5]  Id. at 26.

Plaintiffs respond that, in an claim for illegal exaction, it must demonstrate only that it paid money to the government that was improperly paid and "'by necessary implication'" the statute provides for the return of those fees.  ECF No. 21 at 19-20 (quoting Norman v. United States, 429 F.3d 1081, 1095 (Fed. Cir. 2005), and citing Nat'l Veterans Legal Servs. Program v. United States, 235 F. Supp. 3d 32, 37 n.2 (D.D.C. 2017)).

As the parties discussed in their supplemental briefs, the Federal Circuit recently addressed whether an illegal exaction claim premised on a fee-authorizing statute must be accompanied by a separate money-mandating statute to establish this court's jurisdiction.  See ECF No. 39; ECF No. 40.  As plaintiffs point out, the Federal Circuit distinguished illegal exaction claims from claims requiring a money-mandating statute and held that a fee authorizing statute "by necessary implication" provides that "the remedy for its violation is the return of money unlawfully exacted," thereby ensuring jurisdiction in this court.  Nat'l Veterans Legal Servs. Program v. United States, 968 F.3d 1340, 1348 (Fed. Cir. 2020); see also ECF No. 39 at 4-5.  The Federal Circuit also recently determined that the court may "assume[] jurisdiction over statutory illegal exaction claims with no regard for whether the statutes were 'money-mandating.'"  Boeing Co. v. United States, 968 F.3d 1371, 1384 (Fed. Cir. 2020).

The statute at issue here, 28 U.S.C. § 1930, is clearly a fee authorizing statute and plaintiffs have alleged an illegal exaction claim based on the fees they paid pursuant to the statute.  Therefore, consistent with Federal Circuit precedent, this court has jurisdiction to hear plaintiffs' illegal exaction claims regardless of whether the statute itself contains a remedy requiring the return of fees paid in violation of the statute.  See Nat'l Veterans Legal Servs. Program, 968 F.3d at 1348; Boeing Co., 968 F.3d at 1384.

> B.   Plaintiffs Have Failed to State a Claim Upon Which Relief Can Be Granted

Defendant argues that plaintiffs' claims must be dismissed because they cannot state an illegal exaction claim and therefore have failed to state a claim upon which relief can be granted.  See ECF No. 18 at 29-34.  Defendant contends that plaintiffs cannot state a claim because § 1930 does not violate the Constitution—the second prong of an illegal exaction claim.  See id. at 29.  Specifically, defendant asserts that the fee statute is not subject to the uniformity requirement of the Bankruptcy clause of the Constitution, is

---

[5]   Defendant withdrew this argument in light of the precedent discussed herein in its late-filed supplemental brief.  See ECF No. 41-1 at 1 (defendant's supplemental brief in support of its motion to dismiss).

uniform on its face in any event, and is not impermissibly retroactive or violative of the Due Process clause.  See id. at 29-34.

Plaintiffs respond that they have stated claims upon which relief can be granted because § 1930 violates the uniformity requirement of the Bankruptcy clause in its application—which is the relevant inquiry.  See ECF No. 21 at 24-28, 30-36.  The non-uniformity stems, according to plaintiffs, from the separate USTP and BAP systems.  See id. at 28-29.  Further, plaintiffs contend, the statute violates the Due Process clause of the Fifth Amendment by applying unequally across geographic areas and applying retroactively.  See id. at 36-47.

To state an illegal exaction claim, plaintiffs must demonstrate that they "ha[ve] paid money over to the Government, directly or in effect," that was "improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation."  Eastport S.S. Corp., 372 F.2d at 1007.  "An illegal exaction involves a deprivation of property without due process of law, in violation of the Due Process Clause of the Fifth Amendment to the Constitution."  Norman, 429 F.3d at 1095.  While this court typically lacks jurisdiction over due process claims, where "the government ha[s] illegally exacted money by enforcement of a regulation that was contrary to statute, the court ha[s] jurisdiction under the Tucker Act to render judgment against the United States for recovery of that money."  Aerolineas Argentinas v. United States, 77 F.3d 1564, 1573 (Fed. Cir. 1996).

Although in deciding a motion to dismiss for failure to state a claim this court must presume that the facts alleged are true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555 (citations and quotations omitted).  In this case, the second prong of plaintiffs' illegal exaction claim—that the statute at issue is a violation of the Constitution—is a legal inquiry rather than a factual one.  Id.  Therefore, plaintiffs' allegations related to the unconstitutionality of 28 U.S.C. § 1930 are legal conclusions that the court is not bound to accept as true.

The United States Court of Appeals for the Fifth Circuit recently addressed the constitutionality of § 1930's fee increase and its varying application to debtors in USTP districts and BAP districts.  See In re Buffets, LLC, 979 F.3d 366 (5th Cir. 2020).  In Buffets, the plaintiffs filed their bankruptcies in 2016, and they were still pending in 2018 when the increased fee went into effect.  See id. at 372.  Plaintiffs refused to pay the increased fees, disputed the payments that the bankruptcy court classified as disbursements and challenged the constitutionality of the amendment.  See id.  The bankruptcy court agreed with the plaintiffs and held that the amendment was unconstitutional.  See id.  The trustee appealed that ruling to the district court and the district court certified the question to the Fifth Circuit for decision.  See id. at 372-73.

After settling the plaintiffs' disbursement issue, the Fifth Circuit addressed the plaintiffs' argument that the increased fees were impermissibly retroactive.  See id. at 374-76.  The court noted that the statute on its face applies to disbursements made after the amendment's enactment, rather than turning on when the debtors' bankruptcy cases were filed.  See id. at 374.  The court reviewed the congressional history of applying fee increases to disbursements made after an effective date and concluded that Congress had always made fee increases so applicable.  See id.  It compared the increased fees to property taxes that increase after the purchase of a home and held that the fee increase is not impermissibly retroactive because it does not "impair rights" that the debtors had at the time they filed bankruptcy or "increase . . . liability" for conduct that had already occurred.  Id. at 375-76.  Rather, the increase merely upsets debtors' "expectations as to amounts owed based on future distributions"—a permissible application.  Id. (emphasis in original).

The court then addressed "the main event: whether [the] fee increase violates constitutional uniformity requirements."  Id. at 376-80.  After concluding that the uniformity requirement of the Bankruptcy clause likely applies to the fee statute, the court held that, even if it did not, there is "no uniformity problem" with the statute.  Id. at 377.  In coming to that conclusion, the Fifth Circuit reviewed United States Supreme Court precedent and reasoned that the concept that arbitrary geographical differences in the bankruptcy code are impermissible "'does not deny Congress power to take into account differences that exist between different parts of the country, and to fashion legislation to resolve geographically isolated problems.'"  Id. at 378 (quoting Reg'l R.R. Reorganization Act Cases, 419 U.S. 102, 159 (1974)).  Therefore, when Congress determined that it needed to remedy a shortfall in the USTP's funding, it could "solve 'the evil to be remedied' with a fee increase in just the underfunded districts."  Id. (quoting Reg'l R.R. Reorganization Act Cases, 419 U.S. at 160-61).  Thus, the Fifth Circuit concluded that "[i]t is reasonable for Congress to have those who benefit from the Trustee Program fill the hole in its finances."  Id. at 380.

Finally, the Fifth Circuit turned to the plaintiffs' argument that the increased fees presented a due process violation.  See id. at 380-82.  The court concluded that "[t]he fee increase easily survives rational basis review," because it clearly addresses a funding shortfall in the USTP and is tied directly to the deficit.  Id. at 380.  Likewise, it concluded that the increased fee could not be a taking under the Fifth Amendment because "[t]axes and user fees are not takings under the Fifth Amendment" nor are "[f]ees that strengthen the program [from which] debtors benefit" a taking.  Id. at 381.  The court ultimately concluded that "[t]he fee increase applies to those disbursements even though the case was pending before the increase became law.  And the fee increase is constitutional."  Id. at 382.

12

In the court's view, the Fifth Circuit's reasoning is considered and offers persuasive legal guidance. The court therefore applies the Fifth Circuit's reasoning to each of plaintiffs' claims in this case.

Plaintiffs first allege that the amendment to § 1930 violated the uniformity requirement of Article 1 § 8 of the Constitution and the Due Process clause by not applying uniformly across all jurisdictions. See ECF No. 17 at 12. The Fifth Circuit reasoned that in solving a dilemma specific to the USTP program, Congress acted within its authority to craft a law taking into account regional differences—the USTP and BAP jurisdictions—and applying the solution to only the affected jurisdictions.[6] See Buffets, 979 F.3d at 376-80. It further concluded that the fee increase "easily survives rational basis review" given that it addresses the funding shortfall in the USTP and is directly tied to the deficit in the program. Id. at 380. The court agrees; the amendment to § 1930 is not a violation of the uniformity requirement of the Bankruptcy clause of the Constitution or the Due Process clause.

Plaintiffs next allege that the amendment violated the Due Process clause because it applied retroactively. See ECF No. 17 at 15, 17-18. The Fifth Circuit concluded that the fee increase is not impermissibly retroactive because it does not "impair rights" that the debtors had at the time they filed bankruptcy or "increase liability" for conduct that had already occurred; rather, the increase merely upsets debtors' "expectations as to amounts owed based on future distributions." Id. at 375 (emphasis in original). The court, again, agrees. The increased fee, like an increased property tax, does not implicate or affect a past right—rather, it changes plaintiffs' expectations about the amount of fees owed on future distributions. See id. Therefore, the amendment to § 1930 is not a violation of the Due Process clause or a misapplication of the statute.

Because plaintiff has not—and cannot—plead that the increased fees authorized by the amendment to § 1930 violated "the Constitution, a statute, or a regulation," plaintiffs cannot state an illegal exaction claim upon which relief can be granted. Eastport S.S. Corp., 372 F.2d at 1007; RCFC 12(b)(6). Therefore, plaintiffs' complaint must be dismissed.

---

[6]     The existence of these separate systems has been challenged previously. See St. Angelo v. Victoria Farms, Inc., 38 F.3d 1525, 1531-32 (9th Cir. 1994) (holding that Congress' 1990 extension of the deadline for Alabama and North Carolina to join to the USTP was unconstitutional). But, as in Buffets, the plaintiffs in this case do not ask the court to hold that the division of the bankruptcy program into USTP and BAP districts is unconstitutional. See 979 F.3d at 379. Therefore, the court's "normal reluctance to hold unconstitutional a decades-old feature of federal bankruptcy law should grow into a refusal when no party is asking us to do so." Id.

IV.     Conclusion

Accordingly, for the foregoing reasons:

(1)     Defendant's unopposed motion for leave to file a supplemental brief in support of its motion to dismiss, ECF No. 40, is **GRANTED**;

(2)     On or before **December 2, 2020**, defendant is directed to **FILE** its proposed **supplemental brief**, ECF No. 41-1, as a separate entry on the docket in this matter; and

(3)     Defendant's motion to dismiss for failure to state a claim, ECF No. 18, is **GRANTED**.  The clerk's office is directed to **ENTER** final judgment in defendant's favor, and **DISMISS** plaintiffs' complaint with prejudice.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge